IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY and LESLIE TUREK, as successors in interest to the Estate of Michael Turek, deceased, and in their individual capacities,<br><br>        Plaintiffs,<br><br>  v.<br><br>STANFORD UNIVERSITY MEDICAL CENTER, JUSTIN BIRNBAUM, M.D. MICHAEL GADBOW, M.D., KATHERINE IESEN, M.D., JOY RUSMINTRATIP, M.D., and CLAIRE TURCHI, M.D.<br><br>        Defendants.<br>                                       / | No. C 12-00444 WHA<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## INTRODUCTION

In this action, defendants move for partial summary judgment on plaintiffs' claim for negligent infliction of emotional distress. For the reasons stated below, defendants' motion is **GRANTED.**

## STATEMENT

This is an action brought by plaintiffs Anthony and Leslie Turek. Defendants are Stanford University Medical Center, as well as Stanford physicians Justin Birnbaum and Joy Rusmintratip. The parties have already agreed to dismiss with prejudice defendants Michael Gadbow, Katherine Iesen, and Claire Turchi (Dkt. No. 54).

On October 24, 2010, plaintiffs' adult son arrived at defendants' emergency room, believing that he had experienced a heart attack and stroke. He reported that he suffered from bipolar disorder, and that he felt depressed, anxious, and stressed. In addition, he had asked about physician-assisted suicide during an earlier visit to the emergency room. After learning that plaintiffs' son was not taking his medication, defendants conducted a psychiatric consultation and voluntarily admitted him into the psychiatric unit.

On October 25, defendant Rusmintratip called plaintiffs to introduce herself as the resident in charge of their son's care. Plaintiffs, who were residing in Arizona, talked with her about their son's voluntary admission and how this meant he could leave the psychiatric unit at any time. Following this call, plaintiffs "were always trying to get through and talk" to Dr. Rusmintratip, but at "many times couldn't connect with her" on the phone as she was with other patients (Peitzke Exh. A at 143). On October 29, Dr. Rusmintratip spoke with plaintiffs again on the phone. She informed plaintiffs that their son was being released that day, and stated, "We have no concerns of suicide" (*id.* at 164–65). She also explained that their son had arranged for a post-discharge appointment with his therapist in San Diego and that he had contacted the San Diego Psychiatric Clinic.

In addition to these calls, defendants requested that plaintiff Leslie Turek come to Stanford for a family meeting so that she could accompany her son upon discharge (Opp. 16; LaStofka Exh. A at 15). Mrs. Turek responded that instead, either her son would come to Arizona or she would drive to San Diego to stay with him there. On the day of discharge, defendants described the discharge plans to plaintiffs, who agreed to and approved of the plans (LaStofka Exh. A at 15). The son was released and he committed suicide the next day.

On January 27, 2012, plaintiffs filed a complaint alleging negligence, negligent infliction of emotional distress, and survivorship. On July 2, the parties agreed to dismiss the survivorship claim (Dkt. No. 45). Defendants now seek partial summary judgment on only the negligent infliction of emotional distress claim. A hearing was held, but plaintiffs' counsel inexplicably failed to appear even though the case was put over to the end of the calendar.

2

**ANALYSIS**

Under California law, negligent infliction of emotional distress "is simply the tort of negligence." *Jacoves v. United Merch. Corp.*, 9 Cal. App. 4th 88, 107 (1992). A plaintiff states a claim by alleging the traditional elements of duty, breach, causation, and damages. Whether a defendant owes a duty of care is a question of law. *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989).

California courts recognize two categories of liability for negligent infliction of emotional distress: "bystander" liability and "direct victim" liability. *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992). The distinction between the two lies in the source of a defendant's duty to a plaintiff. *Ibid.* In bystander actions, a plaintiff may recover if she "(1) is closely related to the injury victim, (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim, and, (3) as a result, suffers emotional distress beyond that which would be anticipated in a disinterested witness." *Thing v. La Chusa*, 48 Cal. 3d 644, 647 (1989). Plaintiffs do not contend that they are bystanders to defendants' alleged negligence.

Instead, plaintiffs seek recovery as direct victims. This requires evidence of a duty "that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between" the parties. *Marlene*, 48 Cal. 3d at 590. For example, in *Molien v. Kaiser Foundation Hospitals*, a defendant doctor assumed a duty to a plaintiff who was not his patient. 27 Cal. 3d 916, 923–24 (1980). The doctor nevertheless owed him a duty to convey accurate information because he had negligently examined the plaintiff's wife and instructed her to tell the plaintiff about her syphilis misdiagnosis so that he could be tested. The doctor's tortious conduct thus constituted a breach of duty that "was *directed* to [the plaintiff] as well as to his wife." *Molien*, 27 Cal. 3d at 923 (emphasis added).

*Jacoves* provides another instance of assumed duty in direct victim disputes. 9 Cal. App. 4th at 109. There, the defendants had treated the plaintiffs and their suicidal son in weekly family sessions and had made various representations to the plaintiffs "to ensure their

1   contemporaneous awareness and ongoing treatment" of their son. *Id.* at 110.  Furthermore, the
2   defendants asked the plaintiffs to sign a nonsuicide contract with the son so that he could be
3   discharged to their home.  The son then killed himself after leaving the hospital.  Based on these
4   facts, the court found that there were triable issues as to whether the defendants used the
5   plaintiffs as "active instrumentalities" in the son's treatment such that the defendants assumed a
6   duty of care to the plaintiffs.  *Id.* at 110–11.

   Citing *Molien*, plaintiffs argue that foreseeability and public policy should be the
8   touchstones on which this order determines duty.  Plaintiffs specifically assert that defendants
9   owed them a duty of care because it was foreseeable that defendants' actions — in directing
10  treatment information to plaintiffs and utilizing them as "active instrumentalities" in their son's
11  care — would cause emotional harm to plaintiffs.  For support, plaintiffs present portions of Mrs.
12  Turek's deposition testimony to show that defendants shared details about their son's treatment
13  and frequently contacted plaintiffs.  Defendants object to nearly all of this deposition testimony
14  on evidentiary grounds.

15  As a preliminary matter, plaintiffs misstate the law.  Although *Molien* described its
16  plaintiff's risk of harm as foreseeeable, the California Supreme Court has since criticized such
17  discussion of foreseeability, explaining that "[t]he great weight of this criticism has centered
18  upon the perception that *Molien* introduced a new method for determining the existence of duty,
19  limited only by the concept of foreseeability."  *Burgess*, 2 Cal. 4th at 1074.  "To the extent that
20  *Molien* stands for this proposition," the court further stated, "it should not be relied upon and its
21  discussion of duty is limited to its facts."  *Ibid.*

22  Morever, plaintiffs lack sufficient evidence of a duty of care.  This is so even if the order
23  were to consider Mrs. Turek's deposition testimony admissible.  For instance, plaintiffs claim
24  that defendants assumed a duty by sharing and thus "directing" details about their adult son's
25  treatment details to them.  Yet plaintiffs only point to evidence of one phone conversation with
26  Dr. Rusmintratip, in which she stated that defendants "have no concerns of suicide" (Peitzke
27  Decl. Exh. 1 at 164–65).  This is a far cry from the facts in *Molien*, in which the defendant

4

assumed a duty of care after directing a negligent misdiagnosis *concerning the plaintiff* as well as his wife. *See* 27 Cal. 3d at 923–24. In contrast, Dr. Rusmintratip shared treatment details regarding only plaintiffs' son — not plaintiffs themselves — and thus did not assume a duty on defendants' behalf.

Plaintiffs further argue that defendants assumed a duty by using plaintiffs as active instrumentalities in their son's treatment. In particular, plaintiffs contend that the record establishes defendants' frequent phone calls to plaintiffs, as well as defendants' requests to have plaintiffs participate in family meetings and accompany their son upon discharge. Plaintiffs also assert that there is clear evidence of defendants utilizing plaintiffs to approve of the discharge plans and to provide post-discharge therapy to their son.

Not so. In reality, plaintiffs' own evidence show how they at "many times couldn't connect with [Dr. Rusmintratip]" on the phone because she was busy with other patients (Peitzke Exh. 1 at 143). Plaintiffs also do not dispute that they declined defendants' request to participate in a family meeting and accompany their son upon discharge (Opp. 16; LaStofka Exh. A at 15). The evidence further establishes that although plaintiffs agreed to the discharge plans, it was the son — and not plaintiffs — who arranged for his post-discharge therapy (Peitzke Exh. A at 164; LasStofka Exh. A at 15). As such, the record fails to demonstrate how plaintiffs engaged in weekly family sessions, received numerous representations from defendants about their son, or otherwise participated as active instrumentalities in their son's treatment. *See, e.g.*, *Jacove*, 9 Cal. App. 4th at 110–11.

The order thus finds that defendants did not owe plaintiffs a duty of care. Accordingly, partial summary judgment is **GRANTED.**

## CONCLUSION

To the extent stated, defendants' motion for partial summary judgment is **GRANTED.** Accordingly, the only claim remaining in this action is plaintiff's negligence claim against defendants Stanford University Medical Center, Birnbaum, and Rusmintratip. It is unnecessary to address defendants' evidentiary objections to plaintiffs' exhibit in support of their objection

5

brief, as the order grants partial summary judgment on the merits. Please remember that the final pretrial conference will be at **2 PM ON OCTOBER 7** and the trial will be at **7:30 AM ON OCTOBER 21ST.**

**IT IS SO ORDERED.**

Dated: September 12, 2013.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE